IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANCISCO J. MORAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 7730 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| TRANSPORT WORKERS UNION OF | ) | |
| AMERICA, AFL-CIO, AIR TRANSPORT | ) | |
| LOCAL 512, and AMERICAN AIRLINES, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Francisco J. Moran filed an amended three-count complaint against defendants Transport Workers Union of America, AFL-CIO, Airport Local 512 ("TWU") and American Airlines ("AA"), alleging that AA breached the parties' collective bargaining agreement ("CBA") (Count I) and that TWU breached its duty of fair representation (Count II) and discriminated against plaintiff on the basis of his race in violation of 42 U.S.C. § 1981 (Count III). Defendants have both filed for summary judgment pursuant to Fed. R. Civ. P. 56, contending that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. For the reasons discussed below, defendants' motions for summary judgment are granted.

### **BACKGROUND**[1]

From April 1, 1999, to July 28, 2012, plaintiff held a part-time position with AA as a fleet service clerk. Plaintiff, along with other AA employees, parks in an employee parking lot where he can signal a shuttle bus to take him from the parking lot to his work area. Because the

---

[1] The following facts are, unless otherwise specified, undisputed and come from the parties' Local Rule 56.1 statements and responses.

employee parking lot is in a secure area of airport property, employees must use a specially-issued badge to pass through a security post before parking in the employee lot. Accordingly, AA can determine when an employee arrived at the parking lot. Upon arrival to their work area, plaintiff and other AA employees must "clock in" at a biometric time clock. An employee that clocks in after his scheduled start time receives a registered late violation ("RL").

Over the course of his employment, plaintiff had been counseled numerous times concerning his tardiness to work. In 2007, plaintiff was terminated from his position with AA. After filing a grievance, plaintiff and AA reached a settlement allowing him to return to work on condition that he "maintain a perfect attendance record." On June 18, 2012, plaintiff received a written warning that his attendance was "unsatisfactory," and that failure to correct his attendance record "could lead to further corrective action."

On May 29, 2012, plaintiff arrived to the security post at 5:46 p.m., parked his car and caught the shuttle bus. Upon arrival to his work area, plaintiff did not clock in, but instead went to speak with his supervisor, Joanie Avery, citing problems with the employee shuttle bus. In lieu of clocking in, plaintiff filled out and signed a Payroll Authorization form ("PA form"). The PA form includes text asking the employee to "PLEASE ENSURE THAT YOU HAVE ACCURATELY VERIFIED THE HOURS AND PAY YOU ARE REQUESTING. MISREPRESENTATION OF ANY INFORMATION ON THIS DOCUMENT MAY SUBJECT EMPLOYEE TO IMMEDIATE TERMINATION." On the form, plaintiff indicated that his scheduled start time was 6:05 p.m. and that his actual start time was 6:05 p.m. Plaintiff, however, admittedly did not start work at 6:05 p.m. on May 29, 2012, but instead was a few

minutes late. Plaintiff's supervisor signed the PA form. Plaintiff admits that if he had clocked in on May 29, 2012, he would have received an RL for clocking in after his scheduled start time.

On July 16, 2012, plaintiff arrived at the security post at 3:49 p.m. After parking his car and catching the shuttle bus, plaintiff did not clock in at his work area. Instead, plaintiff again filled out and signed a PA form explaining that the shuttle bus had passed his stop. Plaintiff indicated on the form that his scheduled start time was 4:05 p.m. and that his actual start time was 4:05 p.m. Plaintiff, however, admittedly did not start work at 4:05 p.m, but instead was late. Plaintiff gave the PA form to a supervisor but the form was not signed by any supervisor. Plaintiff admits that if he had clocked in on July 16, 2012, he would have received an RL for clocking in after his scheduled start time.

Following plaintiff's submission of the July 16, 2012, PA form, an AA manager contacted one of plaintiff's supervisors, Jacek Kalamarz, to discuss the PA form and to review plaintiff's July 16, 2012, security post timestamp. Thereafter, on July 18 and July 25, 2012, AA met with plaintiff for a two-part investigation into his conduct. Kalamarz conducted both meetings, at which plaintiff had a union representative. During the July 18 meeting, plaintiff was questioned about his arrival to work on July 16, 2012, and was allowed to tell his side of the story. Plaintiff also provided a handwritten statement during the meeting, explaining that he was late because the employee shuttle bus failed to stop at his bus stop and that he had to waive the bus down. With respect to the PA form plaintiff explained that he "filled [it] out [] the way that [he] thought [it] had to be filled out." Following the session, plaintiff was suspended with pay pending the results of the investigation.

Through additional investigation, Kalamarz learned about plaintiff's May 29, 2012, PA form. During a second investigatory meeting on July 25, 2012, plaintiff was questioned about his arrival to work on May 29, 2012, and was again allowed to tell his side of the story. Plaintiff provided a written statement concerning the events on May 29, 2012, explaining that he "felt that [he] had time to catch a bus and was there over 15 minutes before [his] start time, but there was a deviation from the bus run and [the bus] arrived much later than it should have." He further stated that he "never tried to deceive or lie about what happened. And if [he] filled the PA slip incorrectly, that's what [he] did but with no intentions to lie. [He] was trying to not receive RL because he felt he had not earned it." On July 28, 2012, AA terminated plaintiff for violating rules 5 (requiring accurate timekeeping), 16 (prohibiting misrepresentations or falsification of records), and 34 (prohibiting dishonesty) of its rules of conduct.

Following his termination, on July 29, 2012, plaintiff filed a grievance with AA. On September 13, 2012, AA held a Discharge Appeal Hearing before its vice president, and on September 25, 2012, AA denied plaintiff's grievance. Thereafter, on January 21, 2013, plaintiff met with TWU's Executive Board concerning his termination. An April 29, 2013, letter informed plaintiff that TWU had decided not to arbitrate his grievance. This lawsuit followed.

## DISCUSSION

### A.   Legal Standard

A movant is entitled to summary judgment pursuant to Fed. R. Civ. P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go

beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum–Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). The nonmoving party must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

**B.     Analysis**

As the parties point out, plaintiff's complaint, alleging both that AA breached the CBA and that TWU breached its duty of fair representation, is a hybrid action. See, e.g., West v. Conrail, 481 U.S. 35, 36 (1987). Accordingly, to succeed on either claim, plaintiff must successfully establish both that AA breached the CBA and that TWU breached its duty of fair representation. See Cunningham v. Air Line Pilots Ass'n, Int'l, 769 F.3d 539, 541 (7th Cir. 2014) ("success in a hybrid contract/DFR suit depends on showing both that the employer violated the contract *and* that the union did not represent the workers fairly") (emphasis in original); Crider v. Spectrulite Consortium, Inc, 130 F.3d 1238, 1241 (7th Cir. 1997) ("neither

5

claim is viable if the other fails"). The court, however, finds that plaintiff has failed to establish issues of material fact sufficient to maintain either claim.

1.     **Breach of CBA – AA**

Defendants argue that plaintiff's claim that AA breached the CBA when it fired him presents no genuine issues of material fact, and that AA is therefore entitled to judgment as a matter of law. The parties' CBA required that AA have "just cause" to fire plaintiff. According to defendants, plaintiff's falsification of the PA forms provided just cause to fire him. Plaintiff, however, argues that AA did not have just cause to fire him because he "completed his PA slips incorrectly as a matter of honest mistake, as opposed to doing so with the intent to deceive or defraud." Plaintiff contends that summary judgment is inappropriate because there is evidence in the record that his actions were the result of a mistake or misunderstanding.

"Whether the undisputed facts of a particular case establish just cause is a question of law for the court." Crider, 130 F.3d at 1242. "Just cause is a flexible concept, embodying notions of equity and fairness." Arch of Illinois, Div. of Apogee Coal Corp. v. District 12, United Mine Workers of Am., 85 F.3d 1289, 1294 (7th Cir. 1996). And "for a penalty to be just it must be in keeping with the seriousness of the offense." S.J. Groves & Sons Co. v. Int'l Bhd. of Teamsters, 581 F.2d 1241, 1245 (7th Cir. 1978).

Although it does not define "just cause," AA's Rules of Conduct provide some guidance. Rule 16 states that "[m]isrepresentations of facts or falsification of records is prohibited." Rule 34 states that "[d]ishonesty of any kind in relations with the Company, such as theft or pilferage of Company property, . . . or misrepresentations in obtaining employee benefits or privileges, will be grounds for dismissal." AA also has a Company Policy Regarding Dishonesty that further emphasizes the requirement that employees be honest, listing "timecard irregularities" as a specific example of dishonesty. The policy goes on to state that "[n]o

7

exception can be made under Rule #34," and that "[d]ischarge and prosecution, when applicable, are mandatory." Plaintiff signed this policy on his first day of work.

Plaintiff does not dispute that on two occasions he filled out PA forms stating that he had arrived to work on time when he in fact had been late. In his July 25, 2012, written statement plaintiff explained that he filled out the PA form in the manner that he did because he "was trying to not receive RL because [he] felt [he] had not earned it." Moreover, plaintiff testified during his deposition that he filled in the PA form with his scheduled start time instead of his actual start time on May 29, 2012, because he "felt that had the bus situation not happened, which was out of [his] hands, that is the time that [he] . . . would have been there." While plaintiff may genuinely believe that his actions were not dishonest because the delayed shuttle bus caused his tardiness, AA's rules do not make exceptions for such beliefs.

Contrary to plaintiff's argument, AA did not need "'clear and convincing' evidence, that [his] actions were deliberate and motivated by a 'dishonest intent.'" See, e.g., Truhlar v. John Grace Branch #£825 of Nat. Ass'n of Letter Carriers, 600 F. Supp. 2d 964, 974 (N.D. Ill. 2009) aff'd sub nom. Truhlar v. U.S. Postal Serv., 600 F.3d 888 (7th Cir. 2010) (defendant employer "need not meet the standard that would be applied by a court; such a reading would too tightly constrain the notion of 'just cause'"). Plaintiff's claim that the misrepresentations were the result of a mistake are at most "a mere scintilla of evidence," and therefore insufficient to overcome defendants' motions. See Anderson, 477 U.S. at 252. As a matter of law, AA had just cause to fire plaintiff for his dishonesty.[2] See, e.g., Truhlar, 600 F. Supp. 2d at 975 (concluding

---

[2] As defendants point out, plaintiff has offered no evidence to support his allegation that AA "colluded with and/or entered into a secret agreement with" TWU. Accordingly, the court
(continued...)

that employer had just cause to terminate employee after he ran afoul of a rule prohibiting employees from engaging in dishonest conduct).

## 2. Breach of Duty of Fair Representation– TWU

Because plaintiff has not established a genuine issue of material fact that would prove AA violated the CBA, the court need not consider whether TWU breached its duty of fair representation. See, e.g, Cunningham, 769 F.3d at 541 ("success in a hybrid contract/DFR suit depends on showing both that the employer violated the contract *and* that the union did not represent the workers fairly"). Nonetheless, the court notes that no genuine issue of material fact exists as to whether TWU breached that duty. To establish that TWU breached its duty to fairly represent him, plaintiff must show that TWU's conduct toward him was "arbitrary, discriminatory, or in bad faith." Crider, 130 F.3d at 1243 (internal quotations omitted).

To be "arbitrary," a union's conduct toward its member must be "so far outside a wide range of reasonableness that it is wholly irrational or arbitrary." Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 78 (1991) (internal quotations and citations omitted). Plaintiff admitted to twice reporting on PA forms that his actual start time was different than what he reported. As such, the court has already determined that AA had just cause to fire plaintiff for violating its rules against dishonesty. Plaintiff also violated AA's Rule 5, requiring employees to "[c]heck on or off duty in the prescribed manner and for yourself only." In addition, plaintiff had a long history of being tardy to work, had previously been fired and was under strict instructions to arrive on time every day, and had recently received a written warning concerning his lateness. Based on this

---

[2](...continued)
will not consider these baseless allegations in determining whether a genuine issue of material fact exists with respect to plaintiff's claims.

information alone, TWU was reasonable in concluding that it could not win plaintiff's grievance at arbitration. See, e.g., Crider, 130 F.3d at 1243; see also Trnka v. Local Union No. 688, United Auto., Aerospace & Agric. Implement Workers of Am., 30 F.3d 60, 61 (7th Cir. 1994) ("[S]o long as a colorable argument could be made at the time of the union's decision to drop its support that the grievance is meritless . . . , the decision cannot be regarded as arbitrary."). Even if TWU had pursued all of the investigatory leads plaintiff argues that it should have in order to corroborate his story that the shuttle bus caused his tardiness, the fact would still remain that plaintiff misrepresented his actual start time on two occasions, which was the reason he was fired.

Nor can plaintiff establish that TWU acted in bad faith or discriminated against plaintiff in declining to arbitrate his termination. Plaintiff testified that the only reason TWU gave him for not arbitrating his case was that the union "didn't want to risk anything in my case that would set a negative precedent for future cases." More importantly, plaintiff testified that he did not know why TWU voted against taking his grievance to arbitration, but could "only assume that other factors [were] involved." Such speculation is not evidence of bad faith. See, e.g., Allison v. Dugan, 951 F.2d 828, 833 (7th Cir. 1992) ("[S]imply claiming that the [defendant] acted in bad faith without offering any support for that contention is not enough to prevent entry of summary judgment for the defendants."). As the Seventh Circuit explained in Argyropoulos v. City of Alton, "summary judgment is the 'put up or shut up' moment in the lawsuit, a mere 'hunch about the defendant's motives' is insufficient to survive at this stage." 539 F.3d 724, 737 (7th Cir. 2008) (quoting Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008)). Plaintiff's testimony that TWU's vice president's "attitude on the phone was just blatantly negative

10

towards" him or that he missed a single meeting with plaintiff is not sufficient to create a genuine issue of material fact as to whether TWU acted in bad faith or discriminated against plaintiff in declining to arbitrate his termination.

### 3. Race Discrimination – TWU

As discussed above, plaintiff has failed to point to any direct evidence that a reasonable jury could use to conclude that TWU discriminated against him based on his race. In his response brief, however, plaintiff appears to rely on the indirect method to establish a material issue of fact concerning whether TWU discriminated against him in violation of 42 U.S.C. § 1981. See, e.g., Alexander v. Casino Queen, Inc., 739 F.3d 972, 979 (7th Cir. 2014). Under the indirect method, "a plaintiff has the burden of establishing a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he met the employer's legitimate business expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." Tank v. T-Mobile USA, Inc., 758 F.3d 800, 809 (7th Cir. 2014). Specifically, plaintiff identifies "two significant pieces of indirect evidence" that he argues are sufficient to create an issue of material fact.

First, plaintiff argues that TWU has a "discriminatory pattern of arbitration approvals," because none of the eight TWU members who where terminated between 2010 and 2013 and later had their grievances approved for arbitration by the union were Hispanic. Second, plaintiff argues that the fact that a non-minority union member, Alfredo Vitiritti, was fired for violating AA Rules 16 and 34 and was later reinstated following a Discharge Appeal Hearing is evidence

11

that other similarly situated employees outside of his protected class were treated more favorably. The court rejects these arguments as meritless.

As plaintiff concedes, Vitiritti was reinstated to his position with AA short of arbitration, following a hearing with AA's vice president. Accordingly, Vitiritti is not a similarly situated employee outside of the protected class whom TWU treated more favorably. Plaintiff presents absolutely no evidence that TWU would have taken Vitiritti's grievance to arbitration had he not been voluntarily reinstated by AA. Moreover, the fact alone that none of the eight employees who had their grievances arbitrated by TWU between 2010 and 2013 were Hispanic does nothing to establish that similarly situated employees outside of the protected class were treated more favorably than plaintiff. See, e.g., id. at 809 ("A similarly situated employee is one whose performance, qualifications, and conduct are comparable in all material respects.") (internal quotations omitted). Without a valid comparator, plaintiff's race discrimination claim cannot survive summary judgment under the indirect method of proof because he has failed to establish a prima facie case that TWU engaged in discrimination. See id. at 810. Finally, as discussed above, plaintiff cannot show that he met AA's legitimate business expectations.

## CONCLUSION

For the reasons stated above, the court grants defendants' motions for summary judgment and enters judgment in favor of defendants American Airlines and Transport Workers Union of America, AFL-CIO, Airport Local 512, and against plaintiff Francisco Moran.

**ENTER:** June 17, 2015

**Robert W. Gettleman**
**United States District Judge**